IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dwight Freeman,                          :

        Plaintiff                 :      Civil Action 2:05-cv-1085

v.                                       :      Judge Holschuh

Reginald Wilkerson, *et al.*,            :      Magistrate Judge Abel

        Defendants                :

**Report and Recommendation**

Plaintiff Dwight Freeman, an inmate currently incarcerated at the Southern Ohio Correctional Facility, brings this prisoner civil rights action under 42 U.S.C. §1983. This matter is before the Magistrate Judge on defendants' September 18, 2009 motion for summary judgment (doc. 125).

**I.     Allegations in the Complaint**

The complaint alleges that on June 17, 2005 Freeman was incarcerated in the Local Control Isolation Area at the Mansfield Correctional Institution. The extraction team was called to remove him to another cell. Defendant Correctional Officer Ross, without provocation or cause, bent Freeman's left hand and broke a bone. Defendant Nurse Diane Burson acted with deliberate indifference when she saw swelling in Freeman's left hand but failed to see that he was sent to a doctor for examination. Defendant Nurse Administrator Alice Cain "was notified by plaintiff that he was

1

injured and needed medical treatment and that defendant Burson was refusing him proper medial care." She was deliberately indifferent to his serious medical needs. Both Burson and Cain acted to cover up defendant Ross's excessive use of force.

On June 20, 2005, plaintiff and another inmate, who were on a hunger strike, were let out of their cells to be seen by a nurse. Freeman and the other inmate had an altercation. While Freeman was immobilized, defendant Correctional Officer Windon struck him in the left eye with his closed fist. Then Windon grabbed Freeman in a choke hold and threw him into the cell. Plaintiff Freeman was handcuffed when he was thrown into the cell, but Windon lied and said that plaintiff had refused to give up the handcuffs. Defendant Ross later entered the cell with defendants Hicks, Black, and John Doe. Without good cause, Ross struck Freeman 25 times. Defendants Scott and Gilbert, shift supervisors, ordered this beating. Defendant Alice Cain and the Dentistry Department were deliberately indifferent to Freeman's medical needs by failing to provide him with proper treatment.

Three days later, Freeman was transferred to the Southern Ohio Correctional Facility. There he complained to defendant Nurse Administrator Mona Parks that he was injured when beaten by MANCI officials, but they failed to provide him with proper medical care.

The complaint further alleges that "[d]espite knowledge of the institutional practices, the Defendant [ODRC administrators] have at no time taken any effective actions to prevent the corrections officers from continuing to engage in this type of

misconduct." Some of these administrators "had prior notice of the vicious propensities of Defendants Windon, Hicks, Ross, Black, Scott, Gilbert, Cain, Park, and John Doe, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority." Defendant Director Reginald Wilkinson "failed to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of corrections officers' misconduct."

In its December 29, 2006 Order, the Court dismissed plaintiff's claims against Wilkinson, Berry, Cain, and Parks because he had failed to exhaust his administrative remedies against these defendants. Only plaintiff's § 1983 claims against defendants Scott, Windom, Ross, Gilbert, Hicks, Black, and Burson remain at this stage of the proceedings.

## II. Arguments of the Parties

### A. Defendants

Defendants maintain that they did not use excessive force in violation of Freeman's Eighth Amendment Rights. On June 17, 2005, Freeman was given a direct order to get handcuffed in order for officers to move him to a different cell. Initially, Freeman refused to be handcuffed, but when a cell extraction team arrived to move him, Freeman complied with the order. Freeman was transported without incident, and no force was used against him. As a result, defendants argue that his claim for excessive force based on the events of June 17, 2005 should be dismissed.

On June 20, 2005, Freeman refused to relinquish his handcuffs after he was returned to his cell. Following the intervention of crisis negotiators, Freeman agreed to have his handcuffs removed. An hour later, Freeman attacked another inmate. Both inmates were taken to the medical clinic to be checked. When he was returned to his cell, Freeman only permitted one cuff to be removed. A crisis negotiator spoke with Freeman, but he refused to relinquish the handcuffs. Defendants maintain that Freeman was yelling and combative. After two hours of negotiation failed to resolve the matter, the cell extraction team intervened.

Freeman resisted the cell extraction team's efforts to secure him and remove the handcuffs. According to defendants, Freeman kicked and attempted to bite the officers. The team gained control of Freeman and placed him face down on the ground. He was put in restraints and transported to the medical clinic.

Defendants contend that Freeman did not sustain any significant injury. Medical personnel noted a ½ centimeter laceration on his lip and an abrasion on his scalp. Defendants argue that any force that was used was necessary to maintain and restore discipline. Maintaining prison security and discipline may required that inmates be subjected to physical contact.

Defendants also argue that defendant Burson was not deliberately indifferent to a serious medical need of plaintiff's. The medical records demonstrate that Nurse Burson examined plaintiff's wrist following complaints of pain. She found no redness,

swelling, or open wounds. Freeman had full range of motion. Despite there being no signs of injury, she treated him with a cold compress.

Defendants argue that they are entitled to qualified immunity because Freeman has not established that he suffered a deprivation of his constitutional rights.

### B. Plaintiff

Plaintiff asserts that on June 17, 2005, he was ordered to move to a different cell, and he complied with that order. Freeman maintains there was no need to call for an extraction team. Freeman alleges that after Lieutenant Gilbert opened the food slot to cuff him, defendant Gilbert opened the door to his cell and defendants Ross and Hicks rushed in and threw him on the bed. Freeman was placed in leg irons. While he was immobilized, defendant Ross bent his left hand, breaking a bone. A medical exam was conducted by defendant Burson, but she was deliberately indifferent to his serious medical needs and refused to have Freeman's wrist x-rayed.

Plaintiff argues that defendants used excessive force against him on June 20, 2005. On that date, Freeman was released from his cell to go to the medical department at the same time another inmate was taken out of his cell, and an altercation between the inmates ensued. Freeman maintains that he and the other inmate were released from the cells at the same time in violation of prison policy. Plaintiff asserts that defendant Windom, without provocation, punched him in the eye. Windom threw plaintiff into his cell. Windom took off plaintiff's left handcuff and snapped it onto his

right wrist. He then called the captain's office and falsely reported that Freeman refused to give up the handcuffs.

Defendant Scott arrived at this cell with a video camera. Plaintiff maintains that he was never give a direct order to relinquish the handcuffs. Scott left his cell and returned thirty minutes later with defendants Gilbert, Hicks, Ross, Black and John Does 1-3. At the time Gilbert opened the door to his cell, Freeman was lying face down on the ground. Defendants entered the cell and began bending his arms and legs. Freeman alleges that defendant Ross began beating him. Plaintiff maintains that he was immobilized. Freeman was taken out of his cell. Defendant Ross made racial slurs. Plaintiff contends that defendants Scott and Gilbert ordered the beating and watched as defendant Ross beat him. Nurse Burke had plaintiff escorted by wheelchair to the medical department to be further checked by a doctor and dentist and undergo x-rays.

Freeman argues that there are genuine issues of material fact that preclude summary judgment. Freeman asserts that his declaration and the defendants' statement of facts contradict one another as to the nature of the force used and the reason for its use. Plaintiff maintains that the force was not used to maintain or restore discipline, but to maliciously and sadistically cause harm.

Plaintiff contends that the evidence demonstrates that excessive force was used on June 17, 2005 because he sought medical attention for his hand. With respect to the June 20, 2005 incident, plaintiff points to the fact that inmates are not permitted out of their cells at the same time, but defendants released Freeman and another inmate from

6

their cells simultaneously in violation of prison policy. Freeman maintains that no one gave him a direct order to relinquish the handcuffs. Nothing in the record demonstrates that Freeman refused a direct order prior to defendants entering in his cell and using excessive force. Freeman contends that he did not resist or retaliate against defendants. He further asserts that the medical examination report demonstrates that his medical needs were not properly addressed. He also maintains that the decision of the Chief Inspector stating that the incident falls outside of the scope of prison authority indicates his role in covering up the use of deadly force on plaintiff. Plaintiff maintains that the documents submitted by defendants are fabricated.

Freeman argues that defendants are not entitled to qualified immunity because they violated his clearly established constitutional rights.

### III. Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

**IV.     Discussion**

As a preliminary matter, defendants' motion to strike plaintiff's memorandum in opposition (doc. 136) is DENIED. The Supreme Court has held that a notice of appeal filed by a *pro se* prisoner is deemed "filed" on the date that it is deposited in the prison mail system to be forwarded to the court clerk. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

9

This Court has expanded *Houston*'s "mailbox rule" to civil actions filed by pro se prisoners. *Richard v. Ray*, 290 F. 3d 810, 812 (6th Cir. 2002). Here, the certificate of service indicates that Freeman deposited his response in opposition to defendants' motion for summary judgment in the prison mail system on February 4, 2010. As a result, plaintiff's response was timely filed.

The Eighth Amendment protects prisoners from cruel and unusual punishment. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is. . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To maintain prison security, discipline may require that inmates be subjected to physical contact that would be actionable as assault under common law. *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002). A violation of the Eighth Amendment only occurs when the conduct reflects an unnecessary and wanton infliction of pain. *Id.* Factors to consider in determining whether the use of force was wanton and unnecessary include the extent of injury suffered by the inmate, "the need for application of force, the relationship between that need for force and the amount of force used, the threat "reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id. (quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Supreme Court stated:

> Where a prison security measure is undertaken to resolve a disturbance. . . that indisputably poses significant risks to the safety of inmates and

prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028, 1033 (CA2) (Friendly, J.), cert. denied sub nom. *John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). As the District Judge correctly perceived, "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," 481 F.2d, at 1033, are relevant to that ultimate determination. *See* 546 F.Supp., at 733. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. *See Duckworth v. Franzen*, 780 F.2d 645, 652 (CA7 1985) (equating "deliberate indifference," in an Eighth Amendment case involving security risks, with "recklessness in criminal law," which "implies an act so dangerous that the defendant's knowledge of the risk can be inferred"). . . . But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.

*Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Plaintiff submitted a declaration in support of his opposition to defendants' motion for summary judgment.

June 17, 2005 Incident. Defendants submitted several reports to support their motion for summary judgment. A June 17, 2005 Incident Report completed by J. Cantrell stated that Freeman was given a direct order, but he refused it the first time. After someone spoke with him, Freeman complied. No force was used. (Doc. 125-2 at 1.) A June 17, 2005 Incident Report completed by Corrections Officer Ross stated that he escorted Freeman by holding his right hand and that no other force was used. (Doc. 125-2 at 2.) A June 17, 2005 Incident Report completed by Sgt. Hicks stated that he was

11

called as part as a cell extraction team, but Freeman complied. Sgt. Hicks and Corrections Officer Ross escorted plaintiff. Sgt. Hicks used an escort technique to control his left arm. (Doc. 125-2 at 3.) A June 17, 2005 Incident Report completed by Captain Scott stated that Freeman refused to comply with direct orders to move. A first responder was called, who persuaded Freeman to comply with the order. Freeman was escorted to his cell with the use of an escort technique. No other force was used. Freeman was "clinic checked." (Doc. 125-2 at 4.) A June 17, 2005 incident report indicates that Corrections Officer Clay spoke with Dr. Lee about OC. Dr. Lee indicated that Freeman could not be "O.C.'d". (Doc. 125-2 at 5.)

Plaintiff submitted a declaration in support of his opposition to defendants' motion for summary judgment. With respect to the June 17, 2005 incident, Freeman states:

> Plaintiff Dwight Freeman as pro-se declares under the penalty of perjury; that on June 17, 2005 defendant Ross used excessive force on plt. and broke a bone in plt. left hand after plt. complied to move to another cell. See plt. Ex. (A) 6/17/05 medical report and (doc. #1). Def. Burson medically check plt. and was being deliberately indifferent to plt. serious medical need refusing to send plt. to the medical doctor to be further evaluated for x-rays possible cast, and was conspiring to cover up staff excessive force and on plt. Def. Ross actions was done maliciously and sadistically for the very purpose to cause harm and the administration Warden & DWO did not hold a use of force hearing conspiring with the injury plt. received by Def. Ross. Ross violated policy and procedures of not filing use of force reports and Incident Reports as well as Def. Hicks. In the defendants statement of facts concerning the June 17, 2005 incident, they fabricated a theory that no force was used on plt. Freeman and falsified the intervention report and incident reports.

(Doc. 135 at 14.) Freeman has failed to provide the Court with evidence creating genuine issues of material fact. Rather than presenting affirmative evidence, Freeman has asserted legal conclusions and simply denied defendants' recitation of the facts. In addition to his affidavit, plaintiff attached copies of the Informal Complaint and the Disposition of Grievance with respect to the events of June 17, 2005. These documents, without more, do not establish a question of material fact.

June 20, 2005 Incident. Defendants submitted various reports[1] to support their motion for summary judgment. Defendants maintain that they used force only to the degree that it was necessary to maintain and restore discipline. They argue that the evidence demonstrates that Freeman did not sustain any significant injury as a result of

---

[1] A June 20, 2005 Intervention Report completed by Corrections Officer Scheurer stated that Freeman relinquished the handcuffs without the use of force. (Doc. 125-3 at 1.) A June 20, 2005 Intervention Report completed by Corrections Officer Scheurer stated that Freeman attacked another inmate. He refused to be checked by the medical clinic and to be uncuffed. Despite negotiating with Freeman, force was used. (Doc. 125-4 at 1.) A June 20, 2005 Incident Report completed by Captain Scott stated that Freeman pulled his arm back into his cell after only one cuff was removed for the second time that day. A cell extraction team was assembled. When the team entered the cell, Freeman was in a fighting stance. He was taken to the floor and placed in restraints. He was placed in a cell until the time clinic staff could x-ray his injuries. (Doc. 125-5 at 1.)

A June 20, 2005 Incident Report completed by Lieutenant Gilbert indicated that he unlocked the door for the team to enter after Freeman was taken into the hallway and checked by the medical staff. (Doc. 125-5 at 2.) A June 20, 2005 Incident Report completed by Sgt. Hicks stated that when the extraction team entered the cell, Freeman was waiting at the door to fight. Freeman had managed to get both cuffs on one wrist and was using the cuffs as a weapon. Freeman ended up on his stomach. During the extraction, Freeman attempted to kick and bite them. After Freeman was subdued, he was brought to clinic to be checked. (Doc. 125-5 at 3.)

A June 20, 2005 Incident Report completed by Corrections Officer Black indicated that he was assigned to control Freeman's left leg as part of the extraction team. Freeman resisted the extraction, but he was restrained and removed from the cell. (Doc. 125-5 at 4.) A June 20, 2005 Incident Report completed by Corrections Officer Beverly indicated that once Freeman was secured by the extraction team, no other force was used. (Doc. 125-5 at 5.) A June 20, 2005 Incident Report completed by Corrections Officer Helbig indicated that he secured plaintiff's leg. (Doc. 125-5 at 6.)

A June 20, 2005 Incident Report completed by Corrections Officer Patton stated that Freeman kicked Corrections Officer Patton, but he was ultimately restrained and taken to the clinic. (Doc. 125-5 at 7.)

A June 20, 2005 Incident Report completed by Corrections Officer Ross stated that when the team entered, plaintiff was standing in a fighting position. Freeman was taken to the floor. He was quite combative and attempted to bite Ross. (Doc. 125-5 at 8.)

The Supervisor's Use of Force Summary Report indicated that Freeman had been injured in the incident. (Doc. 125-6 at 1.) The Use of Force Committee Report concluded that the force was justified and not excessive. (Doc. 125-6 at 2.)

14

the cell extraction, which shows that they did not intend to harm him. A June 20, 2005 Medical Exam Report states that Freeman complained of pain in his head, mouth, forehead, left ankle, arms and legs. There was swelling above left eyebrow with ½ inch superficial laceration. His mouth was examined, but there were no loose teeth. There were abrasions on his parietal scalp with scant blood that subsided with direct pressure. There was a jagged laceration on his lower lip measuring approximately 1/4 centimeter. He could not bear weight on his left leg. He was given assistance to stand and placed in a wheelchair to transport. (Doc. 135-4.)

Freeman's affidavit asserts that defendant Windom punched him in the eye and placed him in a choke hold before throwing him back into his cell. According to Freeman, Windom removed the handcuff on Freeman's left hand and placed it on his right hand, closed the food slot and then reported that Freeman was refusing to be uncuffed. Plaintiff further asserts that when the cell extraction team entered his cell, he was lying face down on the ground with his hands behind his back. Freeman states that the video shows a corrections officer punching Freeman, but neither party has submitted the video into evidence. Plaintiff contends that the video was incomplete, and defendants make no reference to the video whatsoever. Plaintiff also states that his injuries were captured on video when he was undergoing evaluation by Nurse Butke.

Here, there is a question of material fact. Freeman denies any conduct that would have justified the use of force. Rather, Freeman claims that defendant Windom intentionally him set up by placing the handcuffs on one of his wrists and reporting that

Freeman refused to relinquish the handcuffs. Freeman claims when the cell extraction team entered his cell he was lying face down on the ground. Defendants, however, maintain that Freeman was in a fighting stance. If Freeman refused to be uncuffed and attempted to bite and kick corrections officers, defendants' conduct would have been reasonable under the circumstances. Measures taken in response to breaches of prison discipline are normally left to the discretion of prison administrators. *Whitley v. Albers*, 475 U.S. 312, 322 (1986). In order to determine whether defendants' use of force was malicious, the trier of fact will have to consider the evidence and make credibility determinations to make factual findings with respect to Freeman's conduct prior to being restrained.

Qualified Immunity. Qualified immunity protects "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, defendants are not entitled to qualified immunity because the right of inmates to be free from cruel and unusual punishment is clearly established. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Deliberate Indifference to Serious Medical Needs. Under some circumstances, refusal to attend to the medical needs of prisoners can be violative of constitutional rights. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court held that the Eighth Amendment requires the government to "provide medical care for those whom it is punishing by incarceration". *Id*. at 103. It further noted that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Id*. at 104.

The failure to attend to a serious medical needs only rises to the level of deprivation of civil rights where both an objective and a subjective requirement have been met. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A plaintiff must objectively show the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Furthermore, he must satisfy the subjective requirement by showing that prison officials acted with "deliberate indifference" to the serious medical need. An official does so where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008), quoting *Farmer*, 511 U.S. at 837. The United States Supreme Court has recognized, however, that deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A failure to correctly diagnose a serious condition – or a failure to investigate a medical condition more closely – may sometimes constitute medical malpractice, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."

A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897, quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990).

Here, Freeman has not demonstrated that he had a sufficiently serious injury. Freeman asserts that his hand was broken, but he has not introduced any evidence demonstrating that it was in fact broken. The evidence in the record indicated that plaintiff only had slight edema, without redness or open areas. In his declaration, plaintiff asserts defendant Burson was deliberately indifferent to his serious medical need because she refused to send him to the doctor for further evaluation. A June 17, 2005 Medical Exam Report states: "clinic check per request security. UOF. [illegible] of wrist." Freeman had full range of motion and was able to make a tight fist. Nurse Burson concluded that he was in stable condition although there was possible soft tissue damage. (Doc. 135-1.) The medical report indicates that Nurse Burson examined his hand and recommended a course of action, and there is nothing in the record to suggest that she did not adequately address his injury. Consequently, the Magistrate Judge RECOMMENDS that plaintiff's claim against defendant Burson be DISMISSED.

V.     **Conclusion**

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants' September 18, 2009 motion for summary judgment (doc. 125) be GRANTED in part and DENIED in part. The Magistrate Judge RECOMMENDS that defendants'

motion for summary judgment with respect to plaintiff's Eighth Amendment claim against defendant Burson for deliberate indifference to a serious medical need be GRANTED. The Magistrate Judge RECOMMENDS that defendants' motion for summary judgment with respect to plaintiff's Eight Amendment claim against defendants Scott, Windom, Ross, Gilbert, Hicks, and Black be DENIED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel<br>United States Magistrate Judge